Chief Justice Makshall
delivered the opinion of the Court.
This action of ejectment presents a contest as to the true position of the southern boundary line of the original town, now city, of Covington, near the extreme termination of that line on Licking river. The land in controversy consists of two adjoining parcels, lying on or near the river. If the disputed line runs as contended for by the lessors of the plaintiff, one of these parcels is on the north side of it, and is within the boundary of the original town of Covington, at the southeast corner of the town; and the other parcel is just outside of said boundary in the northeastern corner of the tract adjoining the original town and part of what was formerly the Kyle tract. On this hypothe- ■ sis, the title to the first of these- parcels was vested in the trustees of Covington by the act-of 1815 establish *388 ing the town, and has passed to their successors, th® President and Council of the City of Covington, unless it has been conveyed by the town or city authorities by valid conveyance. And on the same hypothesis, the second is the same half acre which is excepted in the conveyance from S. E. Foote to the defendant Orr, as having been conveyed by said Foote to C. H. Winter, one of the lessors; and the title is either in said Foote, to whom Kyle’s title passed by regular conveyances, and who is one of the lessors, or it is in Winter, who claims under a deed from Foote.
The question pre» semed by the record.
The act establishing the town of Covington was decided constitutional: (Kennedy’s heirs vs Trustees of Covington, 8 Dana, 56-6.)
The defendant Orr claims that the disputed line is considerably north of that contended for by the plaintiff,, and so far north of it as to exclude the northern parcel in contest from the original town of Covington,, and also to include tiie half acre which is to lie on the line within the first parcel, when in fact it was surveyed and is claimed by Winter as lying adjoining it on the south.
The jury having found for the plaintiff on the demises of the city of Covington and of S. E. Foote, the vei’dict establishes, as between these parties, the line as claimed by the plaintiff, and his right of possessioxi in both parcels. And the instructions, so far as they ax-e understood, being at least as favorable to the defendant as the law would allow, the sole question on the mei'its of the case is, whether the finding is authorized by the law and the evidence. Upon the evidence before the jury, we need not remarle further than to say that if it did not conclusively establish the line as claimed by the plaintiff, it at least authorized the verdict, which having been appx’oved by the Circuit Coux-t, cannot be distux’bed by this Court whatever might be its opinion as to the mere weight of the evidence.
That the act establishing the town of Covington is constitutional, and vested the legal title to 150 acres therein described in the trustees, was decided in the case of Kennedy’s heirs vs Trustees of Covington, (8 Dana, 55-6.) And although the tract of 150 acres referred to in the act was not all laid out into lots and *389 streets at that time, yet as it vests 150 acres in ther trustees for the town, their title extended to that quantity, and the memorandums or endorsements on the original plat show that any surplus not vested in the trustees should be on the western side of the tract, and that consequently the title of the trustees covered the southeastern corner, and included the first parcel of the land now in contest, if it is north of the line dividing the Kennedy tract, on which the town was established, from the Kyle tract. If the trustees were authorized to convey that part of the town tract not laid off into lots at the date of the act establishing the town, (approved February 1815,) then their deed to the three Ganoes, in 1824, invested them with the legal title to the first parcel of land above described as being now in contest, and by subsequent deeds, the title was concentrated in Daniel Gano, and afterwards transferred by the proceedings on his mortgage to Winter, one of the lessors. The Court decided in favor of the defendant, that the power of the trustees to convey as given by the original act, was limited to the lots originally laid off, that consequently, if this parcel was within the town tract, the title still remained in the town authorities. The verdict as to this p.arcel was accordingly found upon their demise and not upon that of Winter. This question is no otherwise materal, at present, than as it relates to the condition on which the plaintiff was allowed to amend the declaration by adding a demise on the title of the city; which condition was that there could be no recovery under that demise,unless the plaintiff showed an equitable title to the land from the city* which is understood to mean such equity to the land as the city was bound to respect. And so it seems to have been understood by the Court and the parties. This equity, as against the trustees, must be regarded as being sufficiently established by their deed to the three Ganoes, unless that deed be regarded as not only insufficient to pass the legal title, because not expressly authorized, but as being actually illegal as being against the objects and policy of the act, and the pur *390 poses for which the title was vested in the trustees. But as the deed does not convey any land which was either ’ expressly or impliedly reserved for public uses, the deed cannot be regarded as in violation of any policy or purpose of the act, unless it tended to deprive either the town or the original proprietors, or their representatives, of some right or benefit which was intended to be secured to them. But as this ground was certainly not intended to be forever reserved from private ownership, and as the act is sedulous to secure the interest of the original proprietors, whose land was vested in trustees for the purpose of a town, it would seem to be entirely consistent with every object of the statute, and not only promotive of, but actually essential to the interests of the town and of the proprietors, that the title to this portion of the town tract should not remain in abeyance, but should be so placed in individuals as that it might be improved, and for that purpose transferred from one to another, subject to the general powers and authority of the town and its trustees. In this view of the question, we are of opinion that although no express authority is given to the trustees to convey any thing but the lots as laid out; yet as the Legislature may have understood this description, as embracing the whole extent of the tract, and as there is nothing to show the contrary, and the entire title is vested in the trustees without any negative words restricting the power of conveyance, we are of the opinion that if they could not pass the legal title to portions of the town not laid off into lots, they might at least pass such right or power to the original proprietors or their heirs or assignees, as the trustees themselves would be bound to respect, and as might authorize the grantees to use the respective portions in a manner appropriate and advantageous to the town and .to themselves as proprietors. If this could not be done, for what purpose was the title of these portions of the tract vested in the trustees instead of being left in the proprietors? It was obviously not intended to deprive them of any interest or even title, except so far as was necessary *391 for the town. The act was doubtless procured by them, and certainly assented to immediately after its passage, as is demonstrated by the documents and other evidence in this record. They established the town with a view to the profits to be derived from the enhanced value of the land, and it cannot be presumed that they would have consented that portions not intended for public use, and thus tending to produce the expected enhancement, should be withheld from them for an indefinite period without the power, either in themselves or the trustees, to make them profitable to them, or in any way advantageous to the town. And the Legislature had no motive for doing so.
The act establishing the town of Covington vesting in them 150 acres of land, and authorizing them to convey the lots laid off, authorized them to sell parts tíf the 150 acres notlaid off and which was not intended for public purposes, and such sale passed an equity at least to the purchaser.
We are, therefore, of opinion that the deed of the trustees to the three Ganoes, who were the devisees of one of the original proprietors, conveying this ground to them in virtue of that title, and of recitals showing their right, so far as the original proprietors and their heirs or alienees were concerned, to have it in exclusion of others; and which recitals are substantially sustained by deeds between the several proprietors and their heirs and alienees, was such an act, as if it did not pass the legal title, at least created or sanctioned aright which the trustees and their successors were bound to respect, and, therefore, constituted such an equity as is referred to in the order allowing the additional demise, and as authorized the grantees to use and transfer the land in subordination to the general authority and title of the trustees. The long acquiescence of the other proprietors and their heirs and their alienees in the deeds and acts referred to, as concentrating in the three Ganoes the entire interest in the land now in question, confirms the recognition of their right by the deed of the trustees, and affording sufficient presumption of the validity and obligatory force of those previous acts and deeds, stated in the deed of the trustees and which, at the time of the trial, had been acquiesced in and acted under for more than twenty four years without dispute. We do not, therefore, deem it necessary to notice in detail the objections to the admissibil» *392 ty of these several deeds, which are only subsidiary to the deed of the trustees. The subsequent deeds by which the interest of the three Ganoes was concentrated in one of them, were properly authenticated, and are, moreover, sustained by the acts done under them and the acquiescence of other parties. This interest as already observed was vested by the proceedings on the mortgage in C. H. Winter, one of the lessors, who if he had not the legal title, had such interest as entitled him to use the title of the city for his^benefit.
A writing showing the true position of a line as agreed upon between those who were the proprietors at its •date, may properly be received as evidence to •show the proper line, and is bin'ding upon all subsequent owu'ers of the land!
It is proper before leaving this part of the case to notice an exception taken to the admission of a part -of the evidence relating to the question of boundary. This was a writing dated in May 1815, purporting to be an agreement between the proprietors of the town tract and Kyle the proprietor of the farm and land adjoining it on the south, whereby the line between the two tracts, which was the original line of the patenriunder which the town tract was held, was definitelyagreed on •and run, and at certain points marked or defined on the ground. There is no doubt that this writing, as the act and admission of Kyle, then the absolute owner of the laud on the south side of the disputed boundary, was evidence of the true position of that boundary against him, and all persons subsequently deriving title ■from’him, and the Court properly treated it only as evidence of the true line, and not as in itself fixing a different line so as to extend the town of Covington to ■bind subsequent pui’chasers who had no notice of it. And although formal proof of the execution of the insti'ument was not made by the subscribing witness -when it was first offered, and it may have been admitted ■on account of its age and of its having been in the custody of the agent of the proprietors, yet as the subscribing witness afterwards referred to it and to its execution in such a manner as to identify it and establish its genuineness, which was also corroborated by other evidence of recognition and of possession corresponding with it, we are of opinion that there was no error in admitting it, either as an ancient -writing, or as an instrument *393 proved by the subscribing witness. Indeed it would seem that the objection was rather on the ground of irrelevancy than of non-execution, or of want of proof of its execution.
fered'hy^defeiid«ntin ejectment petent to show *e<i ¿ypiáintíffió sl“wmleinhim.
With respect to the half acre south of the disputed line, it seems entirely manifest that, fixing the line as the jury have done, this parcel of land is situated immediately south of it, on or near Licking river, and that being certainly included in the conveyance by which the title derived from Kyle was vested in S. E. Foote, and being excepted out of the conveyance of a part of that land by Foote to Orr, the title is either in Orr or in Winter, both of whom are lessors by separate demises. The plaintiff, therefore, was entitled to recover on one of these demises and for the benefit of Winter, if the deeds showing title in Foote were properly before the jury. These deeds were first offered by the defendant, but being objected to by the plaintiff, so far as used for showing title in the defendant, they were allowed to be read, and were read by the defendant merely to show boundary. The plaintiff then offered to use them as evidence to show title in himself, to which the defendant objected, and, thereupon, asked, leave, and was allowed to withdraw them from the jury as evidence for any purpose; and notwithstanding his objection, the plaintiff was allowed to use and read them as evidence, of title on his part. We do not understand that the Court coerced any delivery or surrender of the deeds from the immediate or actual or personal possession of the defendant. But that the deeds having been read by the defendant were among the papers of the cause when the plaintiff offered to read and use them, and that they so remained when the motion of the plaintiff to use them was granted. Thus viewing the facts, we cannot say that there was-any such injury offered to the rights of the defendant, as should constitute a ground for a new trial or for a reversal of the judgment. The whole effect of a new trial, .so far ai this matter is concerned, would be that the plaintiff would be compelled to furnish the deeds, &c., at his *394 own expense, (or copies,) and as he should have done on the trial which has occurred The defendant might perhaps, in justice, insist that he should take and pay or the copies which were used, and the Court might have imposed this or other conditions. But we do not think any thing occurred which should affect the judgment.
Stevenson and J. Sf W. L. Harlan for plaintiffs; Lindsey for defendants.
Wherefore, the judgment is affirmed.